UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RON MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., RAYMOND P. DOLAN, MARK T. GREENQUIST, AND MICHAEL SWADE,<br><br>Defendants. | Case No. 1:18-cv-12344-GAO |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR CLASS DISTRIBUTION ORDER**

Court-appointed Lead Plaintiffs Giuseppe Veleno and Gary Williams and named Plaintiff Ron Miller (collectively, "Plaintiffs"),[1] respectfully submit this memorandum of law in support of their unopposed motion for entry of the Proposed Class Distribution Order ("Motion") in the above-captioned action (the "Action"). If entered by the Court, the Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying [Insert full name of Craig Declaration here] ("Craig Decl."), ¶21.[2]

## I.  BACKGROUND

On July 21, 2023, the Parties entered into the Stipulation, the terms of which established a $4,500,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons or entities that purchased or otherwise acquired Sonus common stock or options during the period of January 8, 2015 through March 15, 2015, inclusive, and who were injured thereby.

The Court granted preliminary approval of the Settlement on October 19, 2023. ECF No. 133 ("Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 18,964 Postcard Notices or sent links to the Notice and Claim Form on the Settlement Website to potential members of the Settlement Class, published the Summary

---

[1] All capitalized terms that are not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement, dated July 21, 2023 (the "Stipulation," ECF No. 122-1), or the Declaration of Margery Craig in Support of Plaintiffs' Unopposed Motion for Class Distribution Order ("Craig Decl." or "Craig Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services, Inc. ("Claims Administrator"), and attached as Exhibit 1 hereto.

[2] The Craig Decl. and the exhibits thereto are attached as Exhibit 1 hereto.

Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a settlement website ("Settlement Website"), and set up a telephone helpline. *See* Craig Decl., ¶¶4-7. The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. The Settlement Website also allowed for online claims filing. *Id.* at ¶¶5-6.

On April 24, 2024, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 145. That same day, the Court also entered an order approving the Plan of Allocation, which was explained in the Notice posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 143.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, received or postmarked no later than March 15, 2024. Craig Decl., ¶8. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Craig Decl., ¶¶8-20.

Of the 3,777 Claims submitted to and fully processed by the Claims Administrator, 137 were paper and online submissions. *Id.*, ¶18. The remaining 3,640 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id.*, ¶18. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process. *See id.*

If a Claim Form was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit A to the Craig Declaration. *Id.*, ¶13 and Ex. A. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 137 paper and online Claims, the Claims Administrator sent Deficiency Notices for 20 Claims (or approximately 14.6%). *Id.*, ¶13.

Similarly, for deficient Electronic Claims, the Claims Administrator sent a Deficiency Email, a sample of which is attached as Exhibit B to the Craig Declaration, advising the Claimant that he, she, or it had twenty (20) days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶¶12-13. Of the 3,640 Electronic Claims, 23 were incomplete or deficient and were filed by a total of 1 E-Claim filers. *Id.*, ¶13. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Craig Declaration, after the deficiency process was complete, the Claims Administrator determined that 989 Claims are acceptable and should receive a distribution. Craig Decl., ¶19(a)-(b). These Claims represent a total Recognized Loss amount of $26,906,828.35 for common stock and $103,816.00 for options. *Id.*, ¶19(a), Ex. C. The Claims Administrator also determined that 2,793 Claims are not eligible and should be rejected for the following reasons: (i) 1,985 claims with shares purchased outside of Settlement Class Period; (ii) 438 claims with no Recognized Losses; (iii) 320 claims with shares not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (iv) 42 claims with shares sold short; (v) 7 duplicate claims; and (vi) one claim withdrawn by the filing entity. *Id.*, ¶19(c).

### III.  LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the March 15, 2024 claims filing deadline. Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of April 25, 2024—over one month after the Court-imposed March 15, 2024 deadline.

Of the 3,777 Claims submitted, only 1 was received or postmarked after the March 15, 2024 deadline, but before the Claims Administrator's imposed cut-off date of April 25, 2024. Craig Decl., ¶18. Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed. *See Hill v. State Street Corp.*, Case No. 1:09-cv-12146-GAO, Dkt. No. 553, ¶3(a) (D. Mass. 2016) (approving *pro rata* payment of otherwise eligible claims received following the claims filing deadline, but prior to final cut-off date); *In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (qualifying late claimants and opt-out claimants permitted to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that the Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after November 24, 2024 be included in the distribution. Craig Decl., ¶21(e). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also*, *Hill*, 1:09-cv-12146-GAO, Dkt. No. 553 at ¶3(h) (approving similar final cut-off date for claims received after the claims filing deadline set by the Court).

5

## IV. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. *See* Craig Decl., ¶21(a). Based on Lead Counsel's substantial experience in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*., ¶21(a).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their checks. Craig Decl., ¶21(b). However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, then if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a Second Distribution. During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*., ¶21(b). Following the Second Distribution, additional redistributions will occur following the same process until no funds remain in the Net Settlement Fund or until Lead Counsel, in

consultation with the Claims Administrator, determines additional distributions are no longer economically feasible. *Id.*, ¶21(c).

Finally, following this discretionary distribution, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to advocating for investors who have been allegedly deceived by materially false and misleading statements about a stock issuer.[3] *See* McGowan Decl. ¶¶3-8[4]; *Somogyi v. Freedom Mortgage Corp.*, 2023 WL 8113242, at *1, *3 (D.N.J. Nov. 22, 2023) (approving Public Justice Foundation as the *cy pres* beneficiary in a securities class action settlement); *In re Sesen Bio, Inc. Sec. Litig.*, 2023 WL 7039541, at *1 (S.D.N.Y. Oct. 26, 2023) (same).

The proposed Class Distribution Order filed herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

---

[3] "Most class actions result in some unclaimed funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393 (N.D. Ga. 2001) ("It is not uncommon in . . . class actions to have funds remaining after payment of all identifiable claims."). Indeed, "[d]espite best efforts[,] . . . it remains virtually certain – especially when large classes are involved – that not all class members will share in an aggregate class recovery. This situation may or may not result in a residue remaining after individual claim distribution." *Jones v. National Distillers*, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999) (citations omitted). In such circumstances, "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers*, 904 F.2d at 1307 (finding that the court properly considered *cy pres* distribution for the limited purpose of distributing the unclaimed funds). "Where distribution of class funds to class members is infeasible, courts often use *cy pres* principles [a method of distributing proceeds to the next best beneficiary] to determine an appropriate use for the funds." *Jones*, 56 F. Supp. 2d at 357.

[4] Attached as Exhibit 2 hereto is the Declaration of Sharon M. McGowan in Support of Plaintiffs' Unopposed Motion for Class Distribution Order ("McGowan Decl.") on behalf of Public Justice Foundation.

## V. RELEASE OF CLAIMS

It is also respectfully requested that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order. *See Hill*, 1:09-cv-12146-GAO, Dkt. No. 553 at ¶3(i) (approving similar release of claims in a distribution of settlement funds in a securities class action settlement); *In re Toyota Motor Corp. Sec. Litig.,* 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014).

## VI. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The total fees and expenses charged by the Claims Administrator in this matter to date are $137,809.96. This includes certain brokerage firms and nominees fees and expenses in the amount of $5,373.43 charged by the Claims Administrator to identify potential Class Members for their work related to this Action. To date, the Claims Administrator has received full payment of $137,809.96. The estimate to conduct the Initial Distribution is $2,728.75. Lead Counsel request that the Court authorize the payment to the Claims Administrator, from the Settlement Fund, of $2,728.75 for the work that will be performed for the Initial Distribution. If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## VII.  RECORDS RETENTION AND DESTRUCTION

Finally, Plaintiffs respectfully request that the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶21(e).

## VIII.  CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Motion be granted.

Dated: January 22, 2025                                   Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Garth Spencer*
Garth Spencer
Joseph D. Cohen
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
310-201-9150
gspencer@glancylaw.com
jcohen@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jacob A. Goldberg*
Jacob Goldberg
Gonen Haklay
Joshua Baker
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com
jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**ANDREWS DEVALERIO LLP**

Glen DeValerio (BBO# 122010)
Daryl Andrews (BBO# 658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: 617-999-6473
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Liaison Counsel for Plaintiffs
and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 22, 2025.

/s/ Gonen Haklay
Gonen Haklay